IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**THOMAS C. HARRIS**,

    Plaintiff,

v.                                                        Civil Action No. 2:12-CV-45
                                                         (BAILEY)

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security**,

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert [Doc. 18] and the plaintiff's Objections thereto [Doc. 19]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. See **Webb v. Califano,** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

### I. Background

On September 27, 2004, the plaintiff filed a disability claim and his first supplemental

security income ("SSI"), alleging that he became disabled on or about December 2, 2002 [R. 126; *see also* R. 18]. This initial claim was denied on February 2, 2005, and again upon reconsideration on September 21, 2005 [R. 126]. On October 6, 2005, the plaintiff requested a hearing [*Id.*]. A hearing was held on October 25, 2006, and January 18, 2007, before Administrative Law Judge ("ALJ") Karl Alexander [*Id.*; *see also* R. 39 and R.137]. On April 5, 2007, ALJ Alexander rendered an unfavorable ruling [R. 123-137]. The ALJ determined that the plaintiff had the following severe combination of impairments: (1) degenerative disc disease/degenerative arthritis of the lumbar spine, with left radiculopathy causing intermittent left leg pain and weakness; (2) facet joint arthropathy; (3) decreased strength of the non-dominant left hand of undetermined etiology; and (4) obesity [R. 128-29]. However ALJ Alexander found that these impairments or combination of impairments do not "meet[ ] or medically equal[ ] one of the listed impairments in 20 CFR Part 404, Subpart A, Appendix 1 . . ." [R. 129]. Although he found that the plaintiff could no longer perform his past work, which was classified as "medium work" [R. 135-36], ALJ Alexander determined that the plaintiff had the residual functional capacity to perform a range of light work activity with certain limitations [R. 129-35].[1] Accordingly, the ALJ ruled that the plaintiff was not disabled [R. 137]. The plaintiff filed a request for review of the ALJ's decision with the Appeals Council on April 21, 2007 [R. 18]. The Appeals Council denied the request for review on April 21, 2009 [R. 140-45]. The plaintiff did not appeal this initial

---

[1]In particular, the ALJ found that the plaintiff "is able to perform a range of light work; requires a sit/stand option; can perform postural movements occasionally[,] except [he] cannot climb ladders, ropes or scaffolds; should not be exposed to temperature extremes or hazards; and is limited to unskilled work involving only routine and repetitive instructions and tasks" [R. 129].

unfavorable ruling to a federal district court [R. 89].

On April 30, 2007, the plaintiff filed his second SSI claim, alleging that he became disabled on or about December 2, 2002, due to carpal tunnel syndrome, back and leg pain, circulation problems, and eye problems [R. 18]. This second claim was denied on August 1, 2007, and again upon reconsideration on November 1, 2007 [*Id.*]. On January 3, 2008, the plaintiff requested a hearing [R. 156-58; *see also* R. 159-64]. A hearing was held before ALJ Alexander on July 1, 2009, [R. 79-90; *see also* R. 168-87] and February 4, 2010 [R. 45-76; *see also* R. 192-214]. On April 22, 2010, ALJ Alexander rendered an unfavorable ruling [R. 15-38]. The ALJ determined that the plaintiff has the following severe impairments: (1) degenerative disc disease of the lumbar spine with grade I spondylolisthesis and left radiculopathy causing intermittent leg pain and weakness; (2) facet joint arthropathy; (3) bilateral carpal tunnel syndrome, status post bilateral surgical releases; (4) obesity; (5) dysthymic disorder/major depressive disorder; (6) generalized anxiety disorder; and (7) borderline intellectual functioning [R. 20-21]. However ALJ Alexander found that these impairments or combination of impairments do not "meet[ ] or medically equal[ ] one of the listed impairments in 20 CFR Part 404, Subpart A, Appendix 1 . . ." [R. 21; *see also* R. 21-34]. Although he found that the plaintiff could no longer perform his past work as an automotive mechanic [R. 37], ALJ Alexander determined that the plaintiff has the residual functional capacity to perform light work with certain limitations [R. 34-36].[2] Accordingly, the ALJ ruled that the plaintiff is not disabled [R. 38]. The plaintiff

---

[2]In particular, the ALJ found that the plaintiff is able "to perform light work . . . with an option to sit or stand; performing all posturals occasionally, except no climbing of ladders, ropes or scaffolds; no exposure to temperature extremes, wet/humid conditions, or hazards; no overhead reaching or lifting; limited to low stress work with no

filed a request for review of the ALJ's decision with the Appeals Council on June 8, 2010 [R. 13-14]. The Appeals Council denied the request for review on May 8, 2012 [R. 1-6].

On June 25, 2012, the plaintiff filed a complaint [Doc. 2] seeking judicial review of the April 22, 2010, adverse decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to the Local Rules, this case was referred to Magistrate Judge Seibert for a recommended disposition. On October 5, 2012, and November 5, 2012, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 13 & 16]. In the complaint and memorandum of law in support of his motion for summary judgment, the plaintiff states that the ALJ's decision should be reversed because it is not supported by substantial evidence and the ALJ committed multiple errors of law and fact [Doc. 2 at 2].

First, the plaintiff asserts that his due process rights were violated when the case was assigned to ALJ Alexander out of rotation [Doc. 13-1 at 7-11]. Second, the plaintiff alleges that the vocational expert testimony was inconsistent with the relevant manuals and the Commissioner failed to meet its burden of proof regarding jobs for which the plaintiff qualified [*Id.* at 11-12]. Third, the plaintiff claims that the ALJ's decision lacks substantial support because the carpal tunnel syndrome finding did not include any manipulative limitations in the plaintiff's residual functional capacity assessment and, despite the inclusion of overhead reaching limitations in the RFC assessment, the ALJ did not find any severe shoulder impairment [*Id.* at 12-13]. Fourth, the plaintiff asserts that the ALJ's decision to not reopen the prior claim is not supported by substantial evidence [*Id.* at 13-

---

production/assembly line pace; no independent decision making responsibilities; work should be unskilled involving routine, repetitive instructions and tasks; no interaction with the general public; and no more than occasional interaction with coworkers and supervisors [R. 34].

14]. Finally, the plaintiff argues that the ALJ failed to consider the April 5, 2007, decision as evidence in accordance with Social Security Acquiescence Ruling 00-1(4) [*Id.* at 14-15].

In the brief in support of its motion for summary judgment, the defendant responds to each claim and argues that the ALJ's decision is supported by substantial evidence [Doc. 17]. In addition, the defendant argues that (1) the plaintiff was deprived of neither due process nor a fair administrative hearing [*Id.* at 9-11], (2) the ALJ did not err at Step Two of the sequential evaluation process [*Id.* at 11-12], (3) the ALJ's ruling does not violate Acquiescence Ruling 00-1(4) [*Id.* at 12-14], (4) the ALJ did not abuse his discretion in declining to reopen plaintiff's first application [*Id.* at 14-15], (5) the ALJ's RFC finding accommodated the plaintiff's credibly established limitations [*Id.* at 15-16], and (6) the vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision [*Id.* at 16-19].

On November 30, 2012, Magistrate Judge Seibert entered his R&R in which he concludes that the ALJ's decision denying the plaintiff's applications for disability and supplemental security income is supported by substantial evidence [Doc. 18 at 16]. As such, the magistrate judge recommends that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted [*Id.*]. On December 13, 2012, the plaintiff filed timely objections [Doc. 19] to these conclusions in the magistrate judge's report and recommendation. The defendant filed a response thereto on December 27, 2012 [Doc. 20].

## II. Applicable Legal Standards

### A. Judicial Review of an ALJ Decision

Judicial review of a final decision regarding disability benefits is limited to

determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive." **Richardson v. Perales**, 402 U.S. 389, 390 (1971); and **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "'supported by substantial evidence'" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See* **Perales**, 402 U.S. at 401 (*citing* **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance . . . ." **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966). Thus, "[i]t is not within the province of a reviewing court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment . . . if [the] decision is supported by substantial evidence." *Id.* (*citing* **Snyder v. Ribicoff**, 307 F.2d 518, 520 (4th Cir. 1962)). Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. **King v. Califano**, 599 F.2d 597, 599 (4th Cir. 1979). "This Court does not find facts or try the case *de novo* when reviewing disability determinations." *Id.*; *see also* **Seacrist v. Weinberger**, 538 F.2d 1054, 1056-57 (4th Cir. 1976); and **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One: Determine whether the claimant is engaging in substantial gainful activity;

Step Two: Determine whether the claimant has a severe impairment;

>    Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;
>
>    Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and
>
>    Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

See 20 C.F.R. § 404.1520(a)(4) (2011).

Once the claimant satisfies Steps One and Two, he/she will automatically be found disabled if he/she suffers from a listed impairment and meets the duration requirement. **Rhoderick v. Heckler**, 737 F.2d 714, 715 (7th Cir. 1984); 20 C.F.R. § 404.1509. If the claimant does not have listed impairments but cannot perform his/her past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. **Rhoderick**, 737 F.2d at 715.

### III.  Discussion

At Step One, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since April 30, 2007 [R. 20]. At Step Two, the ALJ held that the plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine with grade I spondylolisthesis and left radiculopathy causing intermittent leg pain and weakness; (2) facet joint arthropathy; (3) bilateral carpal tunnel syndrome, status post bilateral surgical releases; (4) obesity; (5) dysthymic disorder/major depressive disorder; (6) generalized anxiety disorder; and (7) borderline intellectual functioning [R. 20-21]. At Step Three, the ALJ found that the plaintiff did not meet a listing impairment [R. 21-34] and has the RFC to perform light work with certain limitations [R. 34-36]. At Step Four, the ALJ determined

that the plaintiff is unable to perform past relevant work [R. 37]. At Step Five, the ALJ ruled that the "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform . . ." [R. 37].

In his R&R, the magistrate judge recommends that this Court affirm the ALJ's decision [Doc. 18]. On December 13, 2012, the plaintiff filed timely objections [Doc. 19], taking issue with the conclusions of the magistrate judge; the defendant filed a response to the plaintiff's objections [Doc. 20] on December 27, 2012. This Court will address the objections as they relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

### A. Failure to Assign a Different ALJ

The plaintiff argues in his Motion for Summary Judgment that the failure to assign a different ALJ violated the policy expressed in the Hearings, Appeals and Litigation Law Manual ("HALLEX") as well as his constitutional right of due process of law based upon "the Administrative Procedures [*sic*] Act requiring rotational assignment of ALJs" [Doc. 13-1 at 3, citing R. 612-621; *see also id.* at 7-11]. The magistrate judge concludes in his R&R that HALLEX is merely an internal policy manual that does not impose judicially enforceable duties on the ALJ [Doc. 18 at 10-11];[3] in addition, the ALJ concludes that the plaintiff failed

---

[3]HALLEX is a "manual in which the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff." **Melvin v. Astrue**, 602 F.Supp.2d 694, 699 (E.D. N.C. 2009). HALLEX I-2-1-55 states that, when the OHA receives a request for hearing, the Hearing Office Chief ALJ ("HOCALJ") shall assign the case to an ALJ. These assignments are generally done on a rotational basis, "with the earliest (*i.e.*, oldest) [request for hearing] receiving priority, unless there is a special situation which requires a change in the order in which a case is assigned." HALLEX I-2-1-55A. However, as noted by the magistrate

8

to demonstrate that either any bias resulted from ALJ Alexander hearing the plaintiff's case or ALJ Alexander was not competent to hear the plaintiff's case [*Id.* at 11-12]. In his objections, the plaintiff states that he agrees with the magistrate judge's conclusion that this Court "could not force the Commissioner to follow [HALLEX] or provide a remedy to a claimant who avers that the Commissioner did not follow it" [Doc. 19 at 1]. However, the plaintiff states that he objects to the magistrate judge's conclusion because "the constitutional issue was not addressed" [*Id.*]. In particular, the plaintiff argues that (1) no justification for the assignment out of rotation was provided when the issue was raised and (2) "there would appear to be some potential personal interest in 'sticking to his guns' so to speak with a plaintiff whose credibility he emphatically found lacking in the prior decision" [*Id.* at 2]. The defendant responds that the R&R specifically addressed the plaintiff's constitutional arguments and concluded that the plaintiff's due process of law rights were not violated [Doc. 20 at 2, citing Doc. 18 at 11-12].

Pursuant to section 3105 of the Administrative Procedure Act ("APA"), "[ALJs] shall be assigned to cases in rotation so far as practicable . . . ." 5 U.S.C. § 3105. In his R&R, Magistrate Judge Seibert analyzes the plaintiff's APA argument and notes that "[t]he Supreme Court [of the United States] has held that the 'so far as practicable' language in the APA 'allows assignments to be determined by more than just the mere mechanical

---

judge, HALLEX is "an internal Social Security Administration policy manual . . . [that] does not impose judicially enforceable duties on either the ALJ or [the] court." **Lockwood v. Comm'r Soc. Sec. Admin.**, 616 F.3d 1068, 1072 (9th Cir. 2010); *see also* **Allen v. Astrue**, 2010 WL 2196530, *7 (N.D.W.Va. May 28, 2010) (in which the Honorable District Judge Frederick P. Stamp, Jr., stated that "HALLEX, as an internal guidance tool, 'lacks the force of law'") (internal citations omitted). Furthermore, even if HALLEX were binding and a source of a remedy, the plaintiff must establish that the failure to comply with HALLEX resulted in prejudice. *See* **Melvin**, 602 F.Supp.2d at 704.

9

rotation of giving the next case on the docket to the top name on the list of available examiners.' **Sykes v. Bowen**, 854 F.2d 284, 288 (8th Cir. 1988) (citing **Ramspeck v. Federal Trial Examiners Conference**, 345 U.S. 128, 139 (1953))" [Doc. 18 at 11]. In addition, the magistrate judge notes that certain factors are considered "in determining any impropriety in going outside the rotation:" (1) complexity of the case, (2) the ability of the ALJ, and (3) any bias that would prevent a fair hearing. *Id.* (citing **AAACON Auto Transport, Inc., v. I.C.C.**, 792 F.2d 1156, 1163 (D.C. Cir. 1986), *cert. denied*, 481 U.S. 1048 (1987))].

The plaintiff makes no argument regarding the complexity of the case or ALJ Alexander's ability requiring a different ALJ.  *See* Docs. 13 and 19.  Instead the plaintiff argues that there was an appearance of bias because of the "potential personal interest in [the ALJ] 'sticking to his guns' so to speak with a plaintiff whose credibility he emphatically found lacking in [an earlier] decision" [Doc. 19 at 2].  The plaintiff further argues that he believes that he was not provided "a fair and impartial tribunal," stating that the tone of the decision bolsters this belief [Doc. 19 at 2].  However, the plaintiff's statements that there was a potential for bias or that he feels that he was not provided with a fair hearing are not sufficient to establish that an actual bias existed.  Furthermore, ALJ Alexander specifically stated that he had no problem reaching a different conclusion on the plaintiff's second application if the evidence supported a finding of disability.[4]  Accordingly, this Court hereby

---

[4]The record demonstrates that counsel for the plaintiff reiterated the plaintiff's objection to ALJ Alexander conducting the July 1, 2009, hearing during his opening statement [R. 82; 83-84].  Counsel for the plaintiff noted on the record that he did not receive anything in writing from the ALJ; however, he stated that he did receive a message from the ALJ's staff that the ALJ would proceed with the hearing [R. 83].  In response, ALJ Alexander said that "[he] turned that matter over to [Hearing Office Chief] Judge [George

**OVERRULES** the plaintiff's objections on this issue. For these reasons and those more fully stated in the magistrate judge's R&R, this Court finds that there was no reversible error when ALJ Alexander heard the plaintiff's second claim.

### B. Testimony by the Vocational Expert

The vocational expert testified at the February 4, 2010, hearing that an individual with the claimant's RFC could perform the job duties of an office assistant or a laundry folder at the light level and the job duties of a machine tender or a general sorter at the sedentary level [R. 68-69]. In his R&R, the magistrate judge concludes that the plaintiff could not perform the duties for a laundry folder position [Doc. 18 at 12]; however, the magistrate judge notes that the inclusion of laundry folder as a potential occupation was a harmless error because the plaintiff could perform the duties of other jobs identified by the vocational expert (*e.g.*, office assistant) [*Id.*]. The plaintiff objects to the magistrate judge's conclusion that the vocational expert's testimony was consistent with the relevant manuals [Doc. 19 at 2-3]. In particular, the plaintiff argues that the identified job of office assistant requires frequent reaching in all directions, which is inconsistent with the plaintiff's restriction from overhead reaching [*Id.*].[5]

---

A.] Mills," who determined that ALJ Alexander should proceed with the hearing [*Id.*]. In addition, ALJ Alexander stated the following on the record: "I feel that I can be fair. If I think that Mr. Harris is disabled, I'll pay the case. I don't have any problem with that. So I don't have any real personal interest in the outcome of the case" [R. 88]. At the February 4, 2010, hearing, counsel for the plaintiff again noted the objection to ALJ Alexander holding the hearing [R. 50]. Counsel for the plaintiff stated that he never received any ruling detailing why the laws to which he cited in his objection are not applicable [R. 51]. After noting the objection, counsel for the plaintiff said that he was ready to proceed with the hearing [*Id.*].

[5]The plaintiff also reiterates his argument that the identified job of laundry folder is inconsistent with his restriction from overhead reaching and restriction against exposure

11

The plaintiff argues that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles and Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles [Doc. 19 at 2-4]. In particular, the plaintiff states that this Court should assume that overhead reaching is a required task in an office assistant job because "[a]ny office with standard four drawer file cabinets and wall shelving for packages would potentially involve overhead reaching" [*Id.* at 3]. However, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has found that a vocational expert's testimony that overhead reaching is usually not involved in a certain job does not conflict with the Dictionary of Occupational Titles where the job description requires non-specific reaching and does not specifically state that overhead reaching is required. **Byrd v. Apfel**, 1998 WL 911718, *6 (4th Cir. Dec. 31, 1998). In fact, the vocational expert in this case testified at the February 4, 2010, hearing that, even if the plaintiff were restricted to no more than occasional reaching with either shoulder, he could still perform the duties of office assistant [R. 71]. Accordingly, the ALJ met his burden to establish that a significant number of jobs in one or more occupations exist in the national economy that the plaintiff can perform. *See* 20 C.F.R. § 404.1520(a)(4) (2011); *see also* **Rhoderick v. Heckler**, 737 F.2d 714, 715 (7th Cir. 1984). As such, this Court **OVERRULES** the plaintiff's objection on this issue.

### C. Inconsistency Between the ALJ's Step Two Findings and RFC Conclusion

At Step Two, the ALJ found that the plaintiff had a severe impairment of carpal

---

to temperature extremes or wet/humid conditions [Doc. 19 at 2-3].

tunnel syndrome; the ALJ did not include any limitations related to carpal tunnel syndrome in the RFC assessment [R. 34].[6] The plaintiff objects to the magistrate judge's conclusion that there was no inconsistency between the ALJ's findings at Step Two and the RFC conclusion [Doc. 19 at 3-4]. The plaintiff states that "[t]he R&R was not responsive to the real issue" [*Id.* at 3]. The plaintiff argues that the ALJ failed to include his severe shoulder impairment at Step Two; however, the plaintiff states that this was not prejudicial because the ALJ included a limitation in the RFC restricting the plaintiff from overhead reaching [*Id.* at 4].[7] In addition, the plaintiff argues that the ALJ erred by not including a significant limitation in the RFC conclusion based upon his severe carpal tunnel impairment found at Step Two [*Id.*]. The plaintiff states that this omission was prejudicial because "[a]dditional restrictions in the ALJ's RFC related to manipulation in handling and/or fingering and/or repetitive stress of the sort to cause or aggravate a carpal tunnel condition would probably in combination with the other limitations have ended the inquiry regarding jobs that the claimant could still perform" [*Id.*].

In the R&R, the magistrate judge found that "the existence of limitations found at [S]tep [T]wo does not necessarily equate to a finding of a disabling RFC because [S]tep

---

[6]In particular, the ALJ found that the plaintiff "has the [RFC] to perform light work as defined in 20 CFR 416.967(b) with an option to sit or stand; performing all posturals occasionally, except no climbing of ladders, ropes or scaffolds; no exposure to temperature extremes, wet/humid conditions, or hazards; no overhead reaching or lifting; limited to low stress work with no production/assembly line pace; no independent decision making responsibilities; work should be unskilled involving routine, repetitive instructions and tasks; no interaction with the general public; and no more than occasional interaction with coworkers and supervisors [R. 34].

[7]Because the plaintiff states that this was a harmless error, this Court will not address this argument in this Order.

13

[T]wo and [S]teps [F]our and [F]ive require different levels of severity of limitations" [Doc. 18 at 14 (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *Farrill v. Astrue*, 2012 U.S. App. LEXIS 13222 (10th Cir. June 28, 2012) (unpublished); *Hancock v. Astrue*, 2012 U.S. Dist. LEXIS 52697, *17 n.8 (M.D.N.C. July 9, 2012))]. At Step Two of the five-step sequential evaluation process, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). At Steps Four and Five, the ALJ assesses what the plaintiff is able to do despite any impairments or limitations based upon the RFC conclusion. *Id.* at 404.1520(a)(4)(iv)-(v); 20 C.F.R. § 404.1545(a)(1).

In reaching his RFC conclusion, the ALJ found the claimant to not be entirely credible and cited to medical evidence demonstrating instances where the claimant exaggerated symptoms and limitations [R. 34-36]. As such, the ALJ gave less weight to medical evidence based purely upon the claimant's subjective statements concerning his symptoms and limitations [R. 36]. In deciding to not include functional limitations regarding the carpal tunnel syndrome, the ALJ cited to substantial objective evidence that contradicted the plaintiff's subjective complaints [R.34-36].[8] Because the ALJ's RFC conclusion is supported by substantial evidence, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

### D. ALJ's Decision Not to Reopen the Prior File

The plaintiff objects to the magistrate judge's conclusion that this Court lacks

---

[8]"In contrast to the claimant's complaints regarding his carpal tunnel syndrome, at [a] follow up in March 2008, Dr. Snead reported that the claimant's numbness had 'markedly' improved. He stated that the claimant's fingers were still a 'little bit' stiff, but noted that it would go away with time and recommended that the claimant . . . work on it. Dr Snead advised the claimant to return as needed. The evidence of record indicates that the claimant did not return with any complaints regarding his carpal tunnel . . ." [R. 35].

14

jurisdiction to review the ALJ's decision not to reopen the prior file [Doc. 19 at 4-5]. The plaintiff argues that this Court can review the ALJ's decision "to determine whether the ALJ properly applied correct legal standards and procedures in making his determinations regarding the prior decision" [*Id.* at 4]. The plaintiff argues that the ALJ should have found certain EMG evidence regarding carpal tunnel syndrome to be new and material to the prior decision [*Id.* at 4-5].

Pursuant to 20 C.F.R. § 416.1488(b), "[a] determination . . . may be reopened . . . within two years of the date of the notice of the initial determination [for] good cause . . . to reopen the case." 20 C.F.R. § 416.1488(b). Such good cause includes the submission of new and material evidence. *See id.*; *see also* 20 C.F.R. § 416.1489. At the July 1, 2009, hearing, the plaintiff made a request to reopen the April 5, 2007, determination [R. 84-85]. This Court first notes that this request exceeds the two year statutory time limit. However, more importantly, the determination to not reopen a prior determination is not a final decision that is subject to judicial review by this Court because the plaintiff has not brought a constitutional claim with regard to this issue and the prior claim/application was not constructively reopened. **Califano v. Sanders**, 430 U.S. 99,107-09 (1977) (judicial review of the denial of a petition to reopen a previous claim is limited to those rare circumstances when that decision is challenged on constitutional grounds); **Holloway v. Schweiker**, 724 F.2d 1102, 1105 (4th Cir. 1984) (the mere allegation of the denial of due process is not sufficient to establish subject-matter jurisdiction for judicial review of the denial of a petition to reopen a previous claim where such an allegation is insubstantial or frivolous); **Kasey v. Sullivan**, 3 F.3d 75, 78-79 (4th Cir. 1993) (an exception to the general rule that federal

15

courts lack jurisdiction to review the decision to not reopen a previous claim exists where there has been a "constructive" reopening of the prior claim). As such, this Court finds that it does not have jurisdiction to review the ALJ's determination to not reopen the plaintiff's prior file. Accordingly, this Court hereby **OVERRULES** the plaintiff's objection on this issue.

### E. Acquiescence Ruling 00-1(4)

The plaintiff objects to the magistrate judge's conclusion that the ALJ performed the required analysis pursuant to Acquiescence Ruling 00-1(4) [Doc. 19 at 5]. The Social Security Administration, issued Acquiescence Ruling ("AR") 00-1(4) in response to a ruling by the Fourth Circuit. *See* AR 00-1(4) (referring to ***Albright v. Comm'r of the Soc. Sec. Admin.***, 174 F.3d 473 (4th Cir. 1999)). Pursuant to AR 00-1(4),[9] an ALJ "must consider a finding . . . made in a final decision by an [ALJ] or Appeals Council on a prior . . . claim." AR 00-1(4). Specifically, an ALJ "must consider such finding as evidence and give it appropriate weight in light of all the relevant facts and circumstances when adjudicating a subsequent disability claim." ***Id.*** "In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering

---

[9]AR 00-1(4) "applies only to disability findings in cases involving claimants who reside in Maryland, North Carolina, South Carolina, Virginia or West Virginia at the time of the determination or decision on the subsequent claim at the initial, reconsideration, ALJ hearing or Appeals Council level. It applies only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924, as appropriate, which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim." *Id.*

16

the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." *Id.* However, less weight should be given to a prior finding when that claim becomes more remote ("*e.g.*, where the relevant time period exceeds three years as in **Albright**"). *Id.*

The plaintiff argues that the ALJ did not perform the required **Albright** and AR 00-1(4) analysis because the ALJ did not explicitly state the weight applied to the April 5, 2007, decision in his April 22, 2010, ruling [Doc. 19 at 5]. The plaintiff argues that "[c]onclusory remarks without proper findings do not satisfy the requirements of the ruling" [*Id.*]. The plaintiff further argues that this was prejudicial to him because there was "new evidence of carpal tunnel syndrome, which would potentially have justified a change in the prior RFC by adding manipulative limitations to the current RFC" [*Id.*].

Because more than three years passed between the two decisions, the prior April 5, 2007, ruling was not entitled to great weight. *See* AR 00-1(4). Even though the prior ruling was not entitled to great weight, the ALJ was still required to consider the prior ruling as evidence. *Id.* Although the ALJ did not specifically cite to AR 00-1(4) or his prior ruling in his April 2010 decision, the List of Exhibits attached to the April 22, 2010, decision reflects that the ALJ received the prior (April 5, 2007) decision [R. 39]. In addition, the ALJ considered the prior ruling and findings as demonstrated by the consistent and more favorable listings of impairments at Step Two[10] and RFC conclusion at Step Three.[11] The

---

[10]In addition to nearly all of the impairments included in the April 5, 2007, ruling (degenerative disc disease/degenerative arthritis of the lumbar spine, with left radiculopathy

17

plaintiff argues that, even if the ALJ did consider the prior ruling and findings, he did not explicitly state the weight assigned to this evidence [Doc. 13-1 at 14-15; Doc. 19 at 5]. However, AR 00-1(4) does not impose such a burden upon the ALJ; AR 00-1(4) merely states that the ALJ shall consider and weigh the prior ruling as evidence in reaching his decision in the second claim.

Furthermore, even if the ALJ had erred by not explicitly stating the weight assigned to the prior ruling and findings, the plaintiff was not prejudiced by such an error. The plaintiff alleges that he was harmed because there was "new evidence of carpal tunnel syndrome, which would potentially have justified a change in the prior RFC by adding manipulative limitations to the current RFC" [Doc. 19 at 5]. However, in his April 22, 2010, ruling, the ALJ considered the new evidence regarding carpal tunnel syndrome and determined that this evidence did not support an RFC with manipulative limitations [R. 21, 30-31, and 35]. As such, the plaintiff has not demonstrated any harm. In addition, the

---

causing intermittent left leg pain and weakness; facet joint arthropathy; and obesity), ALJ Alexander added the following impairments in his April 22, 2010, ruling: bilateral carpal tunnel syndrome, status post bilateral surgical releases; dysthymic disorder/amjor depressive disorder; generalized anxiety disorder; and borderline intellectual functioning [R. 128; R.20]. The only impairment from the April 2007 decision that was not included in the April 2010 ruling was "decreased strength of the non-dominant left hand of undetermined etiology" [*Id.*].

[11]In addition to all of the limitations included in the April 5, 2007, ruling (a range of light work; requires a sit/stand option; can perform postural movements occasionally except cannot climb ladders, ropes or scaffolds; should not be exposed to temperature extremes or hazards; and is limited to unskilled work involving only routine and repetitive instructions and tasks), ALJ Alexander added the following limitations in his RFC conclusion in the April 22, 2010, ruling: no exposure to wet/humid conditions; no overhead reaching or lifting; limited to low stress work with no production/assembly line pace; no independent decision making responsibilities; no interaction with the general public; and no more than occasional interaction with coworkers and supervisors [R.129; R. 34].

plaintiff has not alleged that the outcome would have been different if another ALJ had heard his case. As such, for these reasons and those more fully stated in the magistrate judge's R&R, this Court finds that the ALJ did not commit a reversible error and hereby **OVERRULES** the plaintiff's objection on this issue.

### IV. Conclusion

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 18]** should be, and hereby is, **ADOPTED**. Further, the plaintiff's Objections **[Doc. 19]** are **OVERRULED**. Therefore, this Court **ORDERS** that the defendant's Motion for Summary Judgment **[Doc. 16]** is hereby **GRANTED** and the plaintiff's Motion for Summary Judgment **[Doc. 13]** is hereby **DENIED**. Accordingly, this Court hereby **DENIES** and **DISMISSES** the plaintiff's Complaint **[Doc. 2]** and **ORDERS** that this matter be **STRICKEN** from the active docket of this Court. The Clerk is directed to enter a separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: March 21, 2013.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE